SAVOY, Judge.
This is an action in tort arising out of an automobile-pedestrian accident. It is alleged that on November 25, 1962, at approximately 12:05 A.M., Mrs. Ann Taylor was struck by an automobile being driven by defendant, Ray Kendall, in an easterly direction along U. S. Highway 90, east of the City Limits of Lake Charles, in Cal-casieu Parish, Louisiana. Plaintiffs sued for personal injuries allegedly sustained by Mrs. Ann Taylor, and for the related medical expenses incurred by her husband, John Taylor. Ray Kendall and his insurer, Fidelity and Casualty Company of New York, were named as defendants.
Plaintiffs’ demand is based primarily on the alleged negligence of Ray Kendall in failing to maintain a proper lookout, and the doctrine of last clear chance is alleged. Defendants deny any negligence on Kendall’s part, and alternatively plead contributory negligence on the part of Mrs. Ann Taylor.
After a trial on the merits, judgment was rendered in favor of Mrs. Ann Taylor in the amount of $3,000.00, and in favor of John Taylor in the amount of $1,314.40, and against the defendants, in solido. A motion by defendants for a new trial was denied. Defendants have filed an appeal to this Court, and plaintiffs have filed an answer to the appeal.
The issues raised by this appeal are: (1) whether the district court erred in its findings of fact which make applicable the doctrine of last clear chance; and, (2) whether the award to Mrs. Ann Taylor was either manifestly excessive or inadequate.
The record shows that the accident occurred on U. S. Highway 90 in Calcasieu Parish, Louisiana, east of the City Limits of Lake Charles, near a trailer sales lot on the south side of the highway and across from two taverns located on the north side of the highway known as “The Brown Jug” and “Ace of Clubs”. At this location U. S. Highway 90 is a heavily traveled four-laned paved highway approximately 48 to 50 feet in width. There was no street light in the vicinity, but there was some light from the trailer sales lot and from the taverns. At the time of the accident the highway was dry.
On the evening of November 24, 1962, Mr. and Mrs. Taylor had parked their car in the trailer sales lot south of the highway and had spent the evening drinking beers at the two taverns mentioned. At closing time, around midnight, they left for home. On reaching the street they stopped momentarily to allow traffic to pass, as did another witness to the accident, Mr. A. J. Johnson. Mr. and Mrs. Taylor were holding hands and proceeding across the street walking at a slight angle toward the southeast, with Mr. Taylor slightly in advance of and to the right of Mrs. Taylor. The defendant, Ray Kendall, was driving a 1953 model Mercury automobile in an easterly direction within the outside lane of the highway, and his vehicle struck Mrs. Taylor at a point near the south curb of the highway. She was struck severely and about equally on both buttocks and wai knocked forward and came to rest within the highway, about two feet from the south curb. The automobile driven by Kendall stopped about 20 feet beyond and to the east of Mrs. Taylor.
The dispute in this case involves the findings of fact by the district court. Appellants maintain that the plaintiffs were actually across the street and had reached a position of safety on the south curb of the highway, when, for some reason, the plaintiff, Mrs. Ann Taylor, stepped backward from her position of safety on this curb into the right side of the Kendall automobile as it passed.
Plaintiffs, on the other hand, maintain that the district court was correct in find *158 ing that the plaintiffs had never completely crossed the street prior to the accident, and lacked one or two steps from reaching the south curb at the moment of impact.
After a. review of the record, we find that the evidence supports the findings of fact as made by the district court.
As held by the district court, the plaintiffs were clearly negligent in crossing the highway and failing to keep a continuing lookout for approaching traffic. This is not seriously disputed, and plaintiffs have relied upon the doctrine of last clear chance.
The defendants direct our attention to certain evidence to show that Ray Kendall was not negligent. Kendall, a sergeant in the United States Air Force stationed at Channault Air Force Base, was on his way to work at the time of the accident. He testified he was driving at a speed of approximately 25 miles per hour and saw no one in the street ahead of him. His first knowledge of an accident was when he felt a bump on his car and he stopped immediately to see what he had hit or what had hit him. He testified he never saw the plaintiffs or Mr. Johnson prior to the accident and believed he would have seen plaintiffs had they been in the street. Although Kendall and the investigating officer did not notice any evidence of a point of impact on the car on the night of the accident, Mr. Kendall testified to a dent found the following morning, located in the right door panel just beneath the window. Photographs of this dent were taken several days later and were introduced into evidence. It is urged that this dent is such as would have been made by a person falling backward into the side of the automobile. Also, it is urged that the type of injuries received by Mrs. Taylor would support this version of the accident. The investigating officer, Trooper Carl S. Henry, testified that Mr. Taylor made a spontaneous admission shortly after the accident, stating that he and his wife had crossed the street and started down to their car, and she apparently stepped back.
Both Mr. and Mrs. Taylor testified that they had not reached the south side of the street but were a couple of steps from the curb at the time of the accident, Mrs. Taylor testified that she felt the impact on her buttocks, and she felt like she was going with the car. When she came to rest in the highway she did not move until the ambulance arrived. She was not aware of the car before it hit her.
John Taylor testified that the first indication he had of an accident or of the approaching car was when he felt the wind of the car and his wife’s hand was jerked out of his hand. After the impact, he saw the car and his wife “scooting up the street”. He testified his wife was knocked about 20 feet and came to rest in the highway about two feet from the curb. Mr. Taylor denied telling Kendall or the police officer that the accident was not Kendall’s fault, or that he and his wife had reached the curb and she had stepped back into the street.
The version of the accident as given by plaintiffs is also supported by two witnesses. A. J. Johnson testified that he and plaintiffs reached the highway at the same time to cross it, and waited for traffic to clear, starting across at the same time. Then, he trotted across the highway to his car which was also parked on the south side of the highway, about 15 feet south of the curb. As he reached his car, he heard the “thud” and turned to see Mrs. Taylor lying on the highway about a foot or 18 inches from the curb. Mr. Johnson did not know the plaintiffs and had only noticed them in one of the taverns earlier in the evening.
Mrs. Catherine Smith, a waitress at the Brown Jug, testified it was closing time, and she was looking through a small opening in a window, waiting for her husband to pick her up. She saw plaintiffs and Mr. Johnson waiting for traffic, then saw them start across, with Johnson trotting across the highway ahead of plaintiffs. She testified that when plaintiffs had about reached the south side of the street, someone inside the *159 bar said something, and she glanced back, and then she heard the collision.
We agree with the finding of the district court that the evidence established that plaintiffs and Mr. Johnson were crossing the highway as Kendall approached the immediate area. Kendall testified he was driving approximately 25 miles per hour, and this is substantiated by the fact that he stopped approximately twenty to forty feet from the point of impact. Considering the testimony of the plaintiffs and Mr. Johnson and Mrs. Smith, and the speed of the automobile, no other conclusion would be consistent with the time elements involved.
The conflicting version of the accident, that Mrs. Taylor stepped or fell backwards into the right side of the automobile, was discounted by the district court in its written reasons for judgment, as follows:
“Such contention is only substantiated by the testimony of Mr. Kendall, who was not maintaining a proper lookout as he approached the area; by the testimony of the state trooper that Mr. Taylor told him the accident occurred in that manner, but who also testified that Mr. Taylor was highly intoxicated at the time; and by the dent in the side of the right door of the Kendall car. It does not seem reasonable to this court that a dent of the nature described and pictured could have been caused by Mrs. Ann Taylor stepping into or falling into the side of the car as it passed her. The injuries sustained by Mrs. Taylor, except for a few abrasions on the face, were in the area of the pelvis. According to Dr. Walter Moss, her treating physician, she developed large hematomas on both buttocks, such as would result from severe, and more or less equal, blows on both buttocks. Without any direct evidence as to the manner in which the accident occurred, the location of the injuries appears to be inconsistent with an impact at the height of the dent in the car door, particularly without serious injuries above Mrs. Taylor’s beltline. * * *»
We are in accord with this line of reasoning. It is significant that Mrs. Taylor was struck a severe blow, and was thrown forward a distance, coming to rest within the highway, approximately two feet from the curb. It appears to this Court that if Mrs. Taylor had fallen backward and had' been struck by the car on its side to cause a dent such as shown on the photographs, she would have been knocked back off the highway to the south, rather than forward. Although there is a conflict in the evidence, this Court must accept the well considered findings as made by the district court.
We also find that the district court correctly applied the doctrine of last clear chance to the facts of this case. The evidence established that Mrs. Taylor was in a position of peril of which she was unaware and from which she was unable to extricate herself. There was no other traffic in the area at the time, nor was there any obstruction to the view of Kendall. The highway was level and straight. Kendall was familiar with the area and acknowledged that he saw people on both sides of the highway. Had Kendall maintained a proper lookout, the evidence shows he could have seen Mrs. Taylor crossing the highway and could have realized her position of peril, and had ample time and opportunity to have avoided her. Kendall admitted he could have probably stopped at the speed he was going had he seen Mrs. Taylor, and that the inside lane for east-bound traffic on the highway was also open for him, had he tried to turn to avoid Mrs. Taylor. Since Kendall failed to avail himself of the last clear chance to avoid the accident, the district court properly held the defendants liable for the damages resulting from the accident.
The final issue for consideration is whether the award to Mrs. Taylor was either manifestly inadequate or excessive.
*160 Dr. Walter Moss, a general physician and surgeon of Lake Charles, saw Mrs. Ann Taylor in the emergency room of the Lake Charles Memorial Hospital. He found her in severe pain, and noticed evidence of mild shock. She had abrasions on her face and complained of severe pain in her hips. X-rays showed there were no broken bones. On the following morning it was discovered that she had severe anemia. The blood loss was from ruptures of blood vessels deep in the buttocks, and there was hemorrhaging. She developed large hematomas of both buttocks. Blood transfusions were given her, and over a period of two or three days her blood count came up to normal. She had a considerable loss of blood and required approximately five pints of blood. When the hematomas did not absorb, surgery was performed to remove the blood clots and liquified blood. The incisions in each buttock were left open for drainage to allow all the material to continue to come out, and this caused Mrs. Taylor discomfort and restricted her activities for a time after she left the hospital. She was confined in the hospital from the early hours of November 25, 1962, until December 22, 1962. During her hospital confinement, Mrs. Taylor developed an allergic rash, probably as a result of certain drugs administered her, possibly pain killing drugs, but this condition cleared while she was still hospitalized. Dr. Moss followed her for treatment on a regular basis until April, 1963, and examined her the day before the trial in September, 1963, when he found some residuals still present. He found induration or hardness in the muscle layers on the right side and some sagging on the left side. These residuals would bother her and cause discomfort on certain activities, such as sitting for a prolonged period of time, but Dr. Moss estimated she would be free of symptoms in three to six months after September, 1963. No future medical treatment was indicated, and it was just a question of time for the healing process to occur.
After considering the cases cited to us on quantum, and in view of the nature of the injuries and treatment received by Mrs. Taylor, we find that the district court did not abuse its discretion in making an award to her of $3,000.00, and therefore hold that the award granted Mrs. Ann Taylor was neither inadequate nor excessive.
For the reasons assigned, the judgment of the district court is affirmed, and all costs are assessed to defendants.
Affirmed.